2026 IL App (1st) 260690-U

No. 1-26-0690B (cons. w/1-26-0691B)

Order filed July 29, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | Nos.  25 CR 7909 |
| v. | ) |       25 CR 7910 |
| | ) | |
| RYAN HARVEY, | ) | Honorable |
| | ) | James Murphy, |
| Defendant-Appellant. | ) | Michael R. Clancy, |
| | ) | Judges, presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1      *Held*:   We affirm the circuit court's detention order, where the State proved, by clear and convincing evidence, that no conditions can mitigate the real and present threat Harvey poses to the victims and the community.

¶ 2      Defendant Ryan Harvey appeals from an order of the circuit court granting the State's petition for detention, pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2024)), as amended by Public Act 101-652 (eff. Jan. 1, 2023),

commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1]

For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        A Cook County warrant was issued for Harvey on April 26, 2025, after he was charged with various criminal sexual assault offenses. Two days later, Harvey, who had been living in Colorado, was arrested on a "fugitive from justice" warrant. After being released on bond in Colorado, Harvey surrendered to the Chicago Police Department (CPD) on June 23, 2025. He was subsequently indicted for the Cook County sexual offenses under two separate cases, Nos. 25 CR 7909 and 25 CR 7910. In 25 CR 7909, Harvey was charged with five counts of predatory criminal sexual assault of a child under the age of 13 (720 ILCS 5/11-1.40(a)(1)), two counts of criminal sexual assault of a family member under the age of 18 (720 ILCS 5/11-1.20(a)(3)), and one count of aggravated criminal sexual abuse of a family member under the age of 18 (720 ILCS 5/11-1.60(b)). In 25 CR 7910, Harvey was charged with five counts of criminal sexual abuse of a child under the age of 13 (720 ILCS 5/11-1/60(c)(1)(i)).

¶ 5        On June 25, 2025, the State filed a petition for pretrial detention hearing, pursuant to sections 110-2 and 110-6.1 of the Code (725 ILCS 5/110-2, 110-6.1 (West 2024)). The petition alleged that Harvey committed an eligible offense (predatory criminal sexual assault) as listed in section 110-6.1(a)(5) of the Code and that he poses "a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case." Specifically, the State relayed that:

---

[1] "The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. *Raoul* lifted the stay of pretrial release provisions and set an effective date of September 18, 2023. *Id.* ¶ 52; Pub. Act 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023).

"V1 & V2 are sisters. V1 is now 16 y/o, V2 is now 20 y/o. D is Vs former uncle via marriage. Beginning when V1 was 7 y/o while residing in Chicago. Investigation first began out in Colorado Springs. V's aunt found CSAM on D's computers, including AI of D having sex with V1, & reported him to law enforcement. V1 confirmed between 7-12 y/o, D's mouth made contact with the V's breast, D's mouth made contact between the V's buttocks, over her clothing, and the D's hand made contact with the V's SO. D threatened to kill V1's sister if she told anyone. V2 told police D masturbated in front of her at 10 y/o & cont. thru 14 y/o. Multiple incidents of D instructing V2 to masturbate herself, D touching V2's vagina with his hand. D having V2 touch his penis in a back and forth motion."

The petition further alleged that no combination of conditions could mitigate the risk Harvey poses.

¶ 6    That same day, the court held a detention hearing. A pretrial officer testified that Harvey scored a three out of six on the "new criminal activity scale" and a three out of six on the "failure to appear scale," and noted that he was a "yes to the new violent criminal activity flag."

¶ 7    The State proceeded by proffer, noting that the incidents occurred between 2016 and 2021, when all relevant parties were living in Chicago. Harvey is related to the victims by way of marriage, with his wife being the victims' biological aunt. An investigation began after Harvey's wife grew suspicious of Harvey's computer activity in July 2024. She searched files and drives on his home computer server, and found: videos of child pornography, flash drives that included a video of her unclothed niece and AI images of her niece's head on her own unclothed body, and stories Harvey had written describing "awful things about her nieces and things about tiny children." Harvey's wife reported her discovery to her sister (the victims' mother) and the Colorado Springs Police Department, where they were living at the time.

¶ 8    Harvey's wife and her sister then spoke with the 16-year-old victim (Victim 1), who

initially denied any incidents between herself and Harvey. A few hours later, Victim 1 called her mother and disclosed that, when they lived in Chicago, Harvey had sexually abused her. Victim 1 participated in a forensic interview and disclosed multiple incidents of sexual abuse. She disclosed an incident when she was seven years old and Harvey brought her to a bedroom for a nap before he placed his lips on her breasts, leaving saliva on her chest. Another incident occurred when she was eight years old and Harvey picked her up by her ankles and held her upside down while placing his face between the cheeks of her buttocks and blowing. Harvey then placed her down but used his hand to hold her by her vagina to flip her back over. He then threatened Victim 1 with a pocketknife and menaced that if she told anyone, he would kill her older sister (Victim 2). Victim 1 further disclosed "many random occasions" when Harvey would hold her face and use his tongue to kiss her.

¶ 9 Following an investigation in Colorado Springs, the police discovered a "multitude" of images and videos of child sexual abuse material, including a file entitled "Five-Year-Old Girl Raped by Daddy." Police additionally recovered videos from "spy cams" that Harvey had placed in the homes of various family members.

¶ 10 The police then spoke with Victim 2, who related that when she was 10 years old, Harvey came into the living room where she was playing with toys and he placed his hand down his pants, before moving his hand "back and forth where his penis would be." While Harvey did not expose his genitals at the time, he stared at Victim 2 while he did this. There were over ten other similar incidences involving "under the clothes masturbation" in front of Victim 2. When Victim 2 was 11 years old, Harvey began to instruct her to touch herself "in her private areas." She was alone with Harvey in a bedroom when he told her he wanted "to teach her something" and told her to touch her vagina. He instructed her that "it's supposed to feel good." This happened a total of 5 to 10 times. The sexual abuse progressed further to a point where Harvey placed his own hands down

her pants and "rub[ed] her vagina with his fingers, making skin to skin contact." Around the age of 11 or 12, Harvey also made Victim 2 touch his penis and informed her she needed to learn how to do it "because she was going to have to know how to do it one day." Victim 2 recalled that Harvey had an erection and would tell her to move her hand "back and forth on his penis." This type of incident occurred about five times. She first disclosed the abuse to a therapist, prior to her disclosures to the police.

¶ 11    The State noted that Harvey has no "publishable background" and that the investigation in Colorado Springs is ongoing, so he is not currently charged in Colorado. The State noted that the victims' allegations are extremely specific, detailed, and credible. Further, police officers recovered a plethora of videos and images of child sexual abuse on Harvey's personal computer drives. Harvey is a threat, the State argued, not only to his nieces but also the community at large. They noted their concern that, if Harvey were released, he would be able to access this type of material again and he could victimize more children. Moreover, Harvey is a danger to his wife, who currently has an order of protection against him. Last, the State noted that no conditions can mitigate the risk Harvey poses.

¶ 12    Defense counsel countered that it is disingenuous to argue that there are no possible conditions that could protect the community, considering the fact that Harvey turned himself into police once he was aware of the Cook County warrant for his arrest. Counsel noted that Harvey has been aware of these allegations since July 2024 and has "availed himself of this Court in every way possible." Additionally, Harvey has availed himself of the Colorado courts, where he is currently facing a "fugitive from justice" case. He was arrested in Colorado on April 28, 2025, based on the Cook County warrant, and was subsequently released on a $6000 bond. Counsel argued that the allegations against Harvey "[are] really by design by a partner who has and continues to manipulate the court system." Counsel further claimed that "there is evidence to

suggest that [Harvey's wife] was accessing and manipulating file names prior to her initial report to Colorado police."

¶ 13    Reiterating that there have been no allegations since July 2024, counsel argued that Harvey does not pose a danger to anyone—his wife, nieces, or the community. As support, counsel pointed to Harvey's lack of criminal history and the fact that Harvey has not yet been charged following the Colorado investigation. Counsel informed the court that 37-year-old Harvey is a resident of Colorado who had been working at a refreshment company prior to taking leave to surrender on the Cook County warrant. Harvey has two minor children with his estranged wife (all three of whom are living in Florida) and he is not in contact with them due to a "bitter custody battle and an incredibly contentious divorce proceeding." In mitigation, defense counsel proffered several letters in support of Harvey.

¶ 14    In rebuttal, the State noted that—contrary to Harvey's allegations his wife fabricated evidence—Colorado Springs police officers had spoken with Harvey, who admitted to acquiring illegal pornography on the Internet, which he described as "inappropriately young." Harvey further told police officers that he never enjoyed it, but he had acquired it. He additionally made admissions to placing "spy cameras" in the bathrooms of people he knew and admitted to recording those individuals. The State argued that Harvey's admissions add credibility to the victims' outcries. The State also noted that Harvey "clearly has an issue as it pertains to sexual impulses" and noted the unfortunate reality that illegal material is easily accessible on the Internet.

¶ 15    The court noted it found it compelling that Victim 1 initially denied any sexual interaction, before admitting to the indictments. The court found that this fact conflicted with defense counsel's theory that Harvey's wife had manufactured the charges against him. Finding the victims' accounts to be corroborative, the court determined the State proved by clear and convincing evidence that the proof is evident and the presumption great that Harvey committed the offense of predatory

6

criminal sexual assault. The court highlighted Harvey's armed threats to Victim 1 and rejected Harvey's argument that the allegations—as well as the materials collected from Harvey's computer drives—were part of some manipulation or creation by Harvey's estranged wife. The court found that Harvey poses a real and present threat, as evinced by (1) his actions of predatory and sexually violent behavior against two vulnerable children, (2) the planning and grooming involved in these crimes, (3) the "spy cameras" Harvey placed in other family members' houses, and (4) his admissions that he had acquired the pornographic material recovered from his computers. Remarking that electronic monitoring (EM) is not designed to closely monitor violent offenders, does not monitor behaviors, and allows for movement in the community, the court found that no conditions could avoid the real and present danger Harvey poses to both his nieces and the community at large. The court entered a written detention order reflecting its findings and mandated that Harvey be detained during the pendency of his trial.

¶ 16     Harvey filed a motion for relief on August 8, 2025, asking the trial court to reexamine his detention status and impose conditions of release. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 17     On September 10, 2025, the court held a hearing on Harvey's motion. Defense counsel provided the court with several character letters in support of Harvey. Counsel highlighted Harvey's surrender to the CPD and his lack of a prior criminal background. She asserted that the Colorado investigation was a "periphery collateral issue" and reiterated that no charges have been brought in Colorado. Counsel argued the State had grossly mischaracterized Harvey's admissions to the Colorado Springs police—noting that Harvey told authorities he was aware of some archived content but claimed that he and his wife had deleted the material together in 2023. Next, counsel pointed to the delay in outcry and noted that in the interim, Harvey "was out in the community with no monitoring and no oversight whatsoever." Additionally, she alleged that any temporary orders of protection against Harvey had since lapsed or been vacated. Accordingly, Harvey

7

requested that the court reexamine his detention status and find that there are less restrictive conditions that would ensure the safety of the community.

¶ 18        The State proffered the facts of the instant cases consistent with their June 25, 2025, proffer but detailed that thousands of videos and images depicting sexual abuse against children between the ages of 5 and 14 years old had been recovered from Harvey's computers. The State referenced stories found on Harvey's devices that were about parents teaching children to have sex, including one story entitled "raped by mommy and daddy." The State reiterated that Harvey has two young children—two and four years of age. Moreover, videos of Victim 1 showering were found on Harvey's computer, along with stories Harvey wrote about having sexual interactions with the victims and other family members. Victim 1 reported that Harvey would grab her and smack her on the buttocks over her clothing.

¶ 19        The State then referenced incidents when Harvey was a juvenile and created and sold smoke bombs to his classmates in high school, who used them to explode a toilet at school. When the students were caught, Harvey threatened the classmates who named him as the supplier, and the school subsequently expelled Harvey after finding the threats credible. Harvey was sent to a juvenile detention center and the Department of Homeland Security confiscated his computer. Further, the State highlighted Harvey's admissions to the Colorado Springs police: (1) he divulged he had downloaded the pornographic material when he was "younger" and thought he had deleted it, and (2) confessed that he had hidden spy cameras (in people's bathrooms and in both public and private areas) to record people from 2016 to 2023. Additionally, the State noted that Harvey violated temporary no-contact orders that were in place in July, October, November, and December 2024. He also violated a criminal no-contact order in January 2025, and in May 2025 was given deferred judgment on the violation of the order of protection, which resulted in one year of probation, community service, and fines.

¶ 20    Finally, the State argued that even if Harvey were to be placed on EM in Chicago, he would be a threat to any child who may enter his home or any child he may encounter in public. Additionally, his previous use of spy cameras (in both his relatives' bathrooms and public places) poses a danger to the community and he is a flight risk.

¶ 21    Defense counsel countered that there is no information from the Colorado investigation that indicates the spy cameras were placed in public. Further, counsel implored the court not to consider the expunged matter that was "ridiculous 15-year-old behavior."

¶ 22    The court noted in its oral ruling that it finds Harvey to be violent and dangerous. It additionally found that the State met its burden by clear and convincing evidence that Harvey committed detention eligible offenses. In denying Harvey's motion, the court found that no conditions beyond detention can mitigate the real and present threat Harvey poses.

¶ 23    Harvey filed a notice of appeal (Case No. 1-25-2047B) pursuant to Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). That case was voluntarily withdrawn on December 5, 2025. Two separate notices of appeal (Case Nos. 1-26-0690B and 1-26-0691B) were filed thereafter.

¶ 24                                    II. ANALYSIS

¶ 25    Harvey filed memoranda with this court, choosing to expound on the arguments he made in his motion for relief. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (establishing that the motion for relief will serve as the appellant's argument on appeal, and allowing, but not requiring, the appellant to file an additional memorandum in support).

¶ 26    Harvey claims the court should not have granted the State's detention petition because: the State failed to prove that no conditions can mitigate any threat he may pose. Specifically, he points to his lack of contact with the victims and his ability to be put on EM in a different state from the victims as reasons why the court should have ordered conditions of release. Last, he argues that "the possibility that [he] would obtain child pornography while on pretrial release is not a real and

present threat to safety."

¶ 27      The State filed responsive memoranda, arguing that the trial court properly denied pretrial release where the specific, articulable facts of this case demonstrate that Harvey committed detainable offenses, that he poses a real and present threat, and that there are no conditions that could mitigate said threat.

¶ 28      "Pretrial release is governed by section 110 of the Code as amended by the Act." *People v. Morales*, 2023 IL App (2d) 230334, ¶ 4 (citing 725 ILCS 5/110-1 *et seq*. (West 2022)). Pursuant to the Code, "it is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant shall attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). Under the Code, all persons charged with an offense are eligible for pretrial release before conviction. *Id*. The court may deny pretrial release only upon a verified petition by the State and following a hearing. 725 ILCS 5/110-6.1(a) (West 2022).

¶ 29      It is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). The standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

¶ 30      If the court determines that the State has met its burden and the defendant should be denied pretrial release, the court is required to make a written finding summarizing the reasons for denying

pretrial release. *Id*. § 6.1(h)(1). If the court finds that detention is not appropriate, it can impose additional conditions if it determines such conditions:

> "are necessary to ensure the defendant's appearance in court, ensure the defendant does not commit any criminal offense, ensure the defendant complies with all conditions of pretrial release, prevent the defendant's unlawful interference with the orderly administration of justice, or ensure compliance with the rules and procedures of problem solving courts." 725 ILCS 5/110-10(b) (West 2022).

¶ 31    Should a defendant wish to appeal a detention order, they "shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). This motion allows the defendant to ask the trial court to reconsider its prior denial of pretrial release. *People v. Lanier*, 2025 IL App (1st) 242603, ¶ 1. "The trial court shall promptly hear and decide the motion for relief." Ill. S. Ct. R. 604(h)(2). "[A] proper Rule 604(h)(2) hearing *** would consist of an examination of the State's evidence at the initial detention hearing and a determination of whether the State had met its burden of proof." *People v. Williams*, 2024 IL App (1st) 241013, ¶ 29; see *People v. Badie*, 2025 IL App (3d) 250033, ¶ 27.

¶ 32    Pursuant to our supreme court's recent decision in *People v. Morgan*, 2025 IL 130626, ¶¶ 51-54, when the parties to a pretrial detention hearing proceed solely on the basis of proffer and no live testimony is presented, " 'the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature.' " *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 18 (quoting *People v. Morgan*, 2025 IL 130626, ¶ 54). *De novo* review "means that the reviewing court performs the same analysis a trial judge would perform." *People v. Parada*, 2020 IL App (1st) 161987, ¶ 18.

¶ 33    Here, we need not evaluate whether the State established the proof is evident and the presumption great that defendant committed a detainable offense, where Harvey makes no such argument on appeal. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) (upon appeal, any issue not raised in the motion for relief shall be deemed waived). Likewise, we need not consider whether the State met its burden of proving by clear and convincing evidence that Harvey poses a real and present threat to the safety of the victim or the community.

¶ 34    We turn instead to the third prong required for detention, and the only issue Harvey raises on appeal: whether the State met its burden of proving that there are no conditions that could mitigate any threat he may pose. In addressing any risk Harvey may pose to the victims, he argues he has not been accused of sexually assaulting either victim in the last four years and notes "it is doubtful that 500 miles of distance is necessary to mitigate a threat to their safety, but it is certainly sufficient." Harvey further maintains he has no "privileged access to children in Illinois" and therefore poses no significant risk of sexually assaulting a child in Illinois. Harvey notes that a reasonable factfinder could conclude that he poses some risk of sexually assaulting a child and may "indulge those desires again" if presented with the opportunity. However, he argues "that does not mean [he] will have such an opportunity, let alone that he cannot be reliably kept from having one," where the State's proffer indicates the charged offenses were committed through a "familial position of trust and confidence" over the victims. We are unconvinced by these arguments.

¶ 35    In determining which conditions of pretrial release, if any, will ensure the safety of any person(s) or the community, the trial court shall consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including, *inter alia*: physical and mental condition, family ties, employment, financial resources, criminal history, and community ties; (4) the nature and

seriousness of the threat that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1-5) (West 2022). "[T]he nature and circumstances of the charged offenses is just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

¶ 36        As we are employing *de novo* review, we will apply these same factors to the evidence proffered. The following factors support the conclusion that no conditions could mitigate the real and present threat Harvey poses. As to the nature and circumstances of the offenses charged, the detainable offenses involve violence, sexual assaults of minor family members, and the use of a weapon to threaten silence regarding those assaults. Next, the weight of the evidence against Harvey indicates this was not an isolated incident. The proffered evidence included detailed factual accounts from Victims 1 and 2; thousands of videos and images depicting sexual abuse against children between the ages of 5 and 14 years old recovered from Harvey's computers; stories found on Harvey's devices about parents teaching children to have sex; and videos of Victim 1 showering found on Harvey's computer, along with stories Harvey wrote about having sexual interactions with the victims and other family members. While Harvey does not have any publishable criminal history, he faces charges for multiple sexual assault offenses that spanned years. The State proffered evidence that Harvey, who is "sophisticated in the use of tracking devices as well as using cameras," has a background—over a period of at least seven years—of hiding video cameras throughout various family members' bathrooms to surreptitiously record them in various stages of undress. Further, Harvey made admissions to the Colorado Springs police that he was responsible for not only downloading the recovered child pornography but, even more worrisome, installing the hidden cameras (whose footage was, *inter alia*, ostensibly used to create pornographic AI

images of his niece). Moreover, based on the State's proffer, we know that Harvey is not above using the threat of weaponized violence to ensure his victim's silence—indeed, here that threat was effective for several years, until the discovery of corroborating evidence from his hard drives caused the victim's mother to inquire about their interactions with Harvey.

¶ 37        Harvey is correct that the statute does not require that the threat he poses be *eliminated*, but instead that any imposed conditions *mitigate* the threat. We acknowledge Harvey's argument that he willingly surrendered to Chicago police regarding the charged offenses. However, given the above factors, we find that the evidence of record supports that no set of conditions—whether EM or GPS monitoring or home confinement—can adequately *mitigate* the generalized threat Harvey poses, based on "the reactive and permissive nature of the program. See 730 ILCS 5/5-8A-4 (West 2022) (supervisor verifies compliance or noncompliance after the fact and the participant is permitted at least two days of movement in the community per week)." *Badie*, 2025 IL App (3d) 250033, ¶ 31. Likewise, Harvey made admissions that he hid and operated video cameras in various family members' homes, and has demonstrated tech-enabled, covert methods of offending, which establish a real and present danger to children in the community. We are not convinced there is any condition that would prevent Harvey from again utilizing hidden cameras to record potential victims (of any age) without their knowledge or consent. Furthermore, this particular violation is easily accomplished from within the confines of his residence. Nor are our concerns allayed that Harvey would have no contact with children or will not attempt again to violate any outstanding orders of protection.

¶ 38                              III. CONCLUSION

¶ 39        For the reasons stated, the circuit court's order is affirmed.

¶ 40        Affirmed.